**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 07-CR-07-TCK |
| ) | |
| RAYMUNDO RODRIGUEZ, ) | |
| A/K/A/ JUAN MARCOS SPRENGER, ) | |
| ) | |
| Defendant. ) | |

**ORDER**

Before the Court is Defendant's Motion to Enforce Plea Agreement and Motion to Dismiss Indictment (Docs. 13 and 14) ("Motion"). The Court held a hearing on Defendant's Motion on May 7, 2007 and thereafter took the Motion under advisement. For the reasons outlined below, Defendant's Motion is DENIED.

**I.      Factual Background**

The current Indictment, filed January 12, 2007, charges Defendant with the following: (1) False Statement in Passport Application in violation of 18 U.S.C. § 1542 ("Count One") and (2) False Statement of United States Citizenship in violation of 18 U.S.C. § 911 ("Count Two"). With regard to Count One, the Indictment alleges that on or about September 1, 2005, Defendant knowingly made false statements in an application for a United States passport. Specifically, Defendant is charged with falsely representing in the application that his name was Juan Marcos Sprenger and that his social security number was xxx-xx-2970. With regard to Count Two, the Indictment alleges that on or about September 1, 2005, Defendant knowingly and willfully represented himself falsely to be a citizen of the United States.

Before the instant charges were filed against Defendant, Defendant was charged by Information (under the name of Juan Marcos Sprenger) with Interstate Travel in Aid of a Racketeering Enterprise and Aiding and Abetting pursuant to 18 U.S.C. §§ 1952(a)(3) and (2) in Case Number 06-CR-06-CVE ("Case No. 06-CR-06"). The Information, filed on March 2, 2006, alleged that Defendant traveled between California and the Northern District of Oklahoma with the intent of "promoting, managing, establishing, [and] carrying on" a business enterprise involving the unlawful distribution of methamphetamine and thereafter did "promote, manage, establish or carry on" said unlawful activity.

On March 6, 2006, Defendant pled guilty to the Information in Case No. 06-CR-06 pursuant to a written Plea Agreement with the United States. In the Plea Agreement, Defendant made the following admissions:

> I, Juan Marcos Sprenger, admit that between December 2, 2005 and December 12, 2005, I did aid and abet in travel by Augustin Majia Perez by airplane from Tulsa, Oklahoma to the State of California for the purpose of picking up a truck and delivering the truck to myself and Heriberto Verdugo back in Tulsa. The plane ticket was bought for Augustin Majia Perez by my family at my request. I did in fact speak with Augustin Majia Perez by phone while he was driving the truck back to Tulsa, Oklahoma from California when I spoke to him I was directing him on getting the truck back to Tulsa. I arranged for him and Heriberto Verdugo to meet me in Tulsa at a restaurant. The truck contained in excess of 6 pounds of methamphetamine hidden in the spare tire. I was unaware of the weight of the methamphetamine, however I was aware the truck was carrying drugs. I paid money to Heriberto Verdugo while at the restaurant and he in turn gave the money to Mr. Perez. I hoped to get some more money when the drugs were unpackaged as I was going to assist with the unpacking. I had unpackaged drugs for Heriberto Verdugo on previous occasions. I knew that the methamphetamine was intended for distribution. I knew my actions were wrong and illegal. Tulsa is in the Northern District of Oklahoma.

(Plea Agreement at 7, Doc. 58-2, Case No. 06-CR-06.) Further, the obligations of the United States under the Plea Agreement were outlined in Section II of the Plea Agreement as follows:

> Only if the Defendant fully satisfies all obligations outlined in this pleading, the

Government agrees:

### A. Further Prosecution

It shall not initiate additional criminal charges against the Defendant in the Northern District of Oklahoma **that, as of the date of the Defendant's acceptance of this Agreement are known to the Government and arise from its investigation of the Defendant's actions and conduct giving rise to the instant Information**, save and except criminal acts involving violations investigated by the United States Internal Revenue Service. The Defendant understands, however, **that this obligation is subject to all "Limitations" set forth below, and that this Office is free to prosecute the Defendant for any illegal conduct (*i.e.*, violation of federal criminal laws) not discovered by or revealed to the Government during its investigation or occurring after the date of this Agreement or of any acts not revealed to the Government by the Defendant**.

(*Id.* at 10) (emphasis added.) The "Limitations" section of the Plea Agreement, referenced above, states:

This Plea Agreement shall be binding and enforceable upon the Office of the United States Attorney for the Northern District of Oklahoma, but in no way limits, binds or otherwise affects the rights, powers, duties or obligations of any state or local law enforcement agency, administrative or regulatory authorities, civil or administrative enforcement, collection, bankruptcy, adversary proceedings or suits which have been of may be filed by any governmental entity, including without limitation, the Internal Revenue Service, the Tax Division of the Department of Justice and the trustee in bankruptcy.

(*Id.* at 14.) Defendant was sentenced in Case No. 06-CR-06 on June 14, 2006 to a term of 60 months imprisonment and 3 years supervised release. Defendant now argues that the current Indictment, filed in Case No. 07-CR-07, violates Section II of the Plea Agreement between the Defendant and the United States in Case No. 06-CR-06 and should accordingly be dismissed.

## II. Standard

Due process requires "that when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." *United States v. Rockwell Int'l*, 124 F.3d 1194, 1199 (10th Cir. 1997)

3

(citing *Santobello v. New York*, 404 U.S. 257, 262 (1971)).  Rules of contract law inform the interpretation and enforcement of promises in a plea agreement.  *Rockwell Int'l*, 124 F.3d at 1199 (citing *United States v. Cooper*, 70 F.3d 563, 565 (10th Cir. 1995)).  The United States must be held to its agreement through the remedy of specific enforcement.  *Santobello*, 404 U.S. at 263.

A court applies a two-step process in interpreting the terms of a plea bargain:  first, the court examines the nature of the United States' promise; second, the court investigates this promise based upon the defendant's reasonable understanding at the time the guilty plea was entered.  *Cunningham v. Diesslin*, 92 F.3d 1054, 1059 (10th Cir. 1996).  A court should "not allow the [United States] to resort to a rigidly literal construction of the language of the plea agreement" to frustrate a defendant's reasonable expectations.  *United States v. Shorteeth*, 887 F.2d 253, 256 (10th Cir. 1989).  However, a court is "not [to] impose duties on the [United States] that are not an express or implied part of its agreement with the defendant."  *United States v. Furman*, 112 F.3d 435, 439 (10th Cir. 1997).

## III.    Discussion

Defendant argues that the  United States violated Section II of the Plea Agreement by filing the Indictment at issue in this case.  Specifically, Defendant maintains the United States knew that the charges alleged in the Indictment could have been filed at the time it entered the Plea Agreement with Defendant.  In support of this argument, Defendant lists various events occurring between January 1999 and March 2006, which, according to Defendant, illustrate that the United States "knew of the connection between 'Raymundo Rodruguez' and 'Juan Marcos Sprenger' before the Defendant's acceptance of the Plea Agreement in [06-Cr-06.]" (Def.'s Mot. to Enforce Plea Agreement and Mot. to Dismiss 4.)    Because many of these events reflect knowledge of

governmental agencies other than the Office of the United States Attorney for the Northern District of Oklahoma ("U.S. Attorney's Office") , central to Defendant's argument is the position that the U.S. Attorney's Office can be imputed with knowledge from all other governmental agencies. Accordingly, Defendant urges the Court to interpret the term "Government," as included in Section II of the Plea Agreement, to represent <u>all</u> governmental agencies of the federal government, not just the U.S. Attorney's Office.

The United States disagrees, arguing that it is improper to impute the U.S. Attorney's Office with the knowledge of all other governmental agencies. According to the United States' reading of the Plea Agreement, the term "Government" refers <u>only</u> to the U.S. Attorney's Office. Because the U.S. Attorney's Office did not learn of the commission of the false passport crimes charged in Case No. 07-CR-07 until "well after the Plea Agreement was negotiated, the Defendant had entered his plea of guilty, and the written plea agreement was filed with the Court in [06-CR-06]," the United States contends it did not violate the Plea Agreement in filing the instant charges. (Gov't Resp. to Def.'s Mot. to Enforce Plea Agreement and Mot. to Dismiss 7.) The United States also argues that the false passport crimes involved in Case No. 07-CR-07 in no way "arise from" the United States' investigation of "Defendant's actions and conduct giving rise to the . . . Information [in 06-CR-06]." (Plea Agreement at 10, Doc. 58-2, Case No. 06-CR-06.)

At the outset, a literal reading of Section II of the Plea Agreement leads the Court to agree with Defendant's construction of the term "Government." The use of the term "Government," as opposed to the "Office of the United States Attorney for the Northern District of Oklahoma," indicates that the U.S. Attorney's Office is prohibited from charging Defendant with any criminal conduct known to <u>any</u> agency of the federal government before Defendant pled guilty. Had the

5

United States intended the term "Government" to refer only to the U.S. Attorney's Office, it was capable of drafting Section II of the Plea Agreement in a manner that reflected such intent. Indeed, other sections of the Plea Agreement include reference to the "Office of the United States Attorney for the Northern District of Oklahoma," rather than reference to the "Government." (Plea Agreement at 14, Doc. 58-2, Case No. 06-CR-06.) Further, the United States' argument that Defendant's interpretation of "Government" would result in an "impossible situation," although likely true, is insufficient; the United States drafted the Plea Agreement and was thus able to avoid such confusion by using more precise language. The United States would be well-advised to alter the language in its plea agreements in order to avoid this situation in the future.

Notwithstanding the Court's reading of the term "Government" in Section II of the Plea Agreement, the Court finds that the United States did not violate the Plea Agreement in filing the instant charges against Defendant because such charges did not "arise from" the United States' investigation of "Defendant's actions and conduct giving rise to the . . . Information [in 06-CR-06]." (Plea Agreement at 10, Doc. 58-2, Case No. 06-CR-06.) Specifically, Defendant failed to present any evidence showing that the false passport crimes alleged in the current Indictment arose from the United States' investigation of Defendant's methamphetamine charges, as included in the 06-CR-06 Information. Rather, the evidence indicates that the charges of the Indictment "arose from" the fraud indicators in Defendant's September 2005 passport application. It was because of these fraud indicators that Defendant's application was forwarded to the Fraud Prevention Division of the United States Department of State Diplomatic Security Service in Dallas, Texas ("State Department") and an investigation thereafter ensued.

Further, it is unclear that the State Department knew of the criminal charges forming the basis of the Indictment in Case No. 07-CR-07 by March 6, 2006 – the date when Defendant entered his guilty plea in Case No. 06-CR-06. United States Exhibits 8, 9 and 10, introduced at the May 7, 2007 hearing, include a time line and narrative of the investigation regarding Defendant's September 2005 passport application. These exhibits do not demonstrate that, as of March 6, 2006, the State Department had concluded Defendant committed criminal acts in submitting his passport application. Rather, the exhibits merely illustrate that, as of March 6, 2006, an investigation was ongoing and the State Department was aware of a <u>possible</u> fraud situation with regard to Defendant's passport application.

Accordingly, Defendant's Motion to Enforce Plea Agreement and Motion to Dismiss Indictment (Docs. 13 and 14) are DENIED.

**ORDERED THIS 10th DAY OF MAY 2007.**

_____
**TERENCE KERN, JUDGE**
**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OKLAHOMA**